Austin McDEVITT, Respondent,

v.

Ron TILSON, et al., Appellants.

Nos. C1–89–1766, C3–89–1767.

Court of Appeals of Minnesota.

March 20, 1990.

Review Denied May 23, 1990.

Gary L. Huusko, St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., David T. Schultz, Sp. Asst. Atty. Gen., St. Paul, for appellants.

Considered and decided by RANDALL, P.J., and SCHUMACHER and SCHULTZ,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

RANDALL, Judge.

Ron Tilson appeals from the trial court's order denying his motion for summary judgment in this defamation action. Tilson contends the trial court erred in ruling he is entitled only to qualified rather than absolute immunity from suit. We affirm.

## FACTS

This action arose out of the controversy surrounding the Minnesota Zoo's male beluga whale (Big Mouth), its injury, the extensive course of treatment, disputes surrounding that treatment, and the ultimate transfer by the zoo of both of its whales, Big Mouth and Little Girl, to the San Diego Sea World.

McDevitt, the curator of the marine mammals, was generally responsible for the whales' care and treatment, including the quality of water in the whale tanks.

Following Big Mouth's injury in 1984, its wound showed unusual resistance to healing. During treatment, the wound alternated between periods of improvement and regression. In January of 1986, Big Mouth's wound again began to enlarge and cause problems. The enlargement ultimately led to a controversial decision to remove seven inches of bone from Big Mouth's lower jaw. Following surgery, the whale's wound again exhibited alternating periods of improvement and regression. In April of 1987, doctors diagnosed Big Mouth's condition as osteomyelitis, a potentially fatal bone disease. Recognizing that it had exhausted its medical options for treating Big Mouth, the zoo transferred both whales to Sea World (Little Girl was transferred for companionship, as it was felt the whales should not be separated).

When it was learned that the Minnesota Zoo was considering acquiring other beluga whales to replace the two whales shipped to San Diego, an animal rights coalition threatened to sue the zoo to enjoin it from acquiring additional whales, provided the

zoo with a copy of the proposed complaint to facilitate discussions, and an internal zoo committee was convened to evaluate several of the allegations in the threatened lawsuit.

The committee attributed the exacerbation of the whale's condition to improper chlorination of the whale tanks. In its report of August 26, 1987, the committee concluded McDevitt had been professionally negligent for knowingly exposing the whales to excessively high levels of chlorine. Tilson, the director of biological programs at the zoo, sent the report to Roberts, the zoo director, who released it at an open meeting of the zoo's Whale Management Committee.

McDevitt claims he was defamed by statements made in that internal zoo report which were subsequently quoted in a Star & Tribune article appearing on September 30, 1987. McDevitt's defamation claim also included statements quoted in a September 10, 1987, article which originally appeared in a July 24, 1987, letter from Ron Tilson to Robert Moshenko, the division head of the fish and marine mammal division of the Artic Resource and Assessment Section of the Freshwater Institute in Winnipeg, Canada.

Tilson moved the trial court for summary judgment arguing he was immune from suit because the allegedly defamatory statements were published by a high level government official and were required by law to be published. Tilson further alleged he was entitled to a constitutional privilege because McDevitt was a public figure and had not shown the existence of malice by clear and convincing evidence. The trial court denied Tilson's motion and set the matter on for trial on the merits. We affirm.

## ISSUES

1. Did the trial court err by refusing to grant Tilson absolute immunity?

2. Did the trial court err by finding McDevitt is not a public official or figure to whom the actual malice standard of *New York Times Co. v. Sullivan* applies?

## ANALYSIS

■ When reviewing a trial court's denial of summary judgment, this court is required to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

### I.

In denying Tilson's motion for summary judgment, the trial court found that Tilson and the zoo were not absolutely immune from liability for publication of Tilson's statements, but were entitled only to qualified immunity. We agree. Tilson is protected from liability if, and only if, his allegedly defamatory statements about McDevitt were made in good faith and without malice. The record does not support Tilson's claim to an absolute unqualified privilege. We affirm the trial court's finding that issues of good faith and malice here raise factual questions inappropriate for summary judgment. *See Bird v. State Department of Public Safety,* 375 N.W.2d 36, 41 (Minn.Ct.App.1985).

The Minnesota Supreme Court has extended absolute privilege, which grants total immunity for false and defamatory statements to participants in judicial and legislative proceedings, to executive officials where public service or the administration of justice requires it. *Johnson v. Dirkswager,* 315 N.W.2d 215, 220 (Minn. 1982). Tilson argues the statements by which McDevitt claims he was defamed were published by Kathryn Roberts, the high level government officer, and thus he is absolutely immune from suit.

■ Tilson, however, does not argue he is the top-level government official who was entitled to the privilege. Instead he contends that because the zoo's administrator, Kathryn Roberts,[1] is entitled to abso-

---

**1.** Roberts, originally a party to the lawsuit, has since been dismissed out by plaintiff and her liability is not in issue.

lute immunity, and he works for Roberts, Tilson is entitled to Roberts's privilege. Tilson has made no showing to support his position that the privilege granted a top-level government official to publish defamatory matter passes through from the ranking official to a lower-echelon employee. Even if such a privilege exists for the matters Roberts published, Tilson independently communicated the allegedly defamatory material to Roberts and other members of the board. We need not decide whether Roberts enjoys absolute immunity, as her decision to publish the report does not relieve Tilson of liability for his communications if liability exists.

Additionally, Tilson argues that because the publication of the internal report was required by law, a claim of defamation does not lie against him or the zoo. Minn.Stat. § 471.705, subd. 1 (1986), which governs meetings by state agencies provides in pertinent part:

[A]ll meetings, including executive sessions, of any state agency, board, commission or department * * * and of any committee, subcommittee, board, department or commission thereof, shall be open to the public * * *.

    *    *    *    *    *    *

In any meeting which under subdivision 1 must be open to the public, at least one copy of any printed materials relating to the agenda items of the meeting which are prepared or distributed by or at the direction of the governing body or its employees and which are:

(1) distributed at the meeting to all members of the governing body;

(2) distributed before the meeting to all members; or

(3) available in the meeting room to all members,

shall be available in the meeting room for inspection by the public.

Tilson argues the internal report was an agenda item at the Whale Committee meeting and thus was required by law to be made available to all who attended the meeting. Tilson contends that because the allegedly defamatory statements in the internal report were required by law to be made public, he should be absolutely immune from liability. *See Freier v. Independent School District No. 197,* 356 N.W.2d 724, 729–30 (Minn.Ct.App.1984).

■ It is clear that one who is required by law to publish allegedly defamatory statements is absolutely immune for his acts. Public bodies have an absolute privilege to follow the requirements of the law. *Dirkswager,* 315 N.W.2d at 223; *McGaa v. Glumack,* 441 N.W.2d 823, 826 (Minn.Ct. App.1989) *pet. for rev. denied* (Aug. 15, 1989); *Freier,* 356 N.W.2d at 729.

However, the internal report was drafted for the purpose of responding to allegations raised in the lawsuit threatened by the Animal Rights Coalition. Thus, the internal report had its own privilege and did not have to be made public. Likewise, Tilson's purpose for writing the July 24th letter was to respond to the allegations by the animal rights coalition that the zoo failed to keep the Canadian Government advised of the complete medical condition of the male beluga. Neither Tilson nor the zoo had the obligation to release the letter to the press or anyone else under the Minnesota Government Data Practices Act. Tilson cannot rest on a claim that his hands were tied as it is clear the letter and the report could have properly been kept confidential.

■ The Minnesota Government Data Practices Act specifically provides:

Data collected by state agencies, political subdivisions or statewide systems as part of an active investigation undertaken for the purposes of the commencement or defense of a pending legal action, *or which are retained in anticipation of a pending legal action,* are classified as protected nonpublic data * * *.

Minn.Stat. § 13.39, subd. 2 (1986) (emphasis added). To the extent that Minn.Stat. § 13.39 and the Open Meeting Law conflict, section 13.39 takes precedence in order that portions of discussions or material constituting private data remain that way. *See Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 29–31 (Minn.1989).

Although Tilson argues the report was generated not only to respond to allegations of a threatened lawsuit, but also to evaluate the future of the whale program at the zoo, the report, by its clear and unambiguous wording, *was in direct response to the threatened lawsuit.*[2]

Tilson, in his own words to the internal committee regarding the report, brought the report under the protection of Minn. Stat. § 13.39, subd. 2. Arguably, the report might be characterized as a hybrid, with some aspects of an internal document prepared in response to the threatened suit, and thus nonpublic under the statute, and with some aspects of a public report for which a claim of privilege may be made.

■ There is nothing in the record to indicate whether Tilson or other zoo officials considered separating out of the report specific responses to the threatened lawsuit, and then publishing a general statement which could properly be made public. This is a factual issue which either side is entitled to develop at trial. But, for purposes of summary judgment, the trial court did not err in denying Tilson's motion for summary judgment premised on his argument that as a matter of law he *had to* communicate everything to the public. Tilson had a right to take advantage of the Minnesota Government Data Practices Act. A political decision not to do so but rather to publicize in order to exonerate the zoo administration and lay fault on McDevitt does not entitle Tilson to absolute immunity.

## II.

Because we affirm the trial court's denial of summary judgment on the immunity issue, we must address the issue of constitutional privilege under *New York Times Co.*

*v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ On appeal from summary judgment in a defamation case involving a public figure or public official, the test is whether the evidence in the record could support a reasonable jury finding that the plaintiff has shown actual malice by clear and convincing evidence. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *see also Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 492 n. 21 (Minn.1985); *Fitzgerald v. Minnesota Chiropractic Association,* 294 N.W.2d 269, 270 (Minn. 1980).

In its order denying summary judgment, the trial court stated it was "not convinced that McDevitt was a public figure." Tilson argues that the trial court's determination was erroneous as a matter of law, and insists there can be no dispute on his claim that McDevitt is both a public official and a public figure.

Tilson argues that McDevitt is a public official within the meaning of *New York Times* and therefore must demonstrate that Tilson acted with actual malice in order to prevail. Tilson argues that since McDevitt is a public official as a matter of law and cannot possibly prevail under an actual malice test, summary judgment should be granted in his favor at this pretrial stage. The trial court disagreed. We affirm the trial court.

■ The test for determining whether a person is a public official is whether such person is

in a position significantly to influence the resolution of [public] issues * * * who [has], or appears to the public to have,

---

**2.** In his memo directing that an internal committee be formed, Tilson wrote:

There have been a number of specific allegations made in a recent threatened lawsuit by Brian B. O'Neill representing the Sierra Club, the Humane Society of the United States, Friends of the Animals and Their Environment, the Fund for Animals, and the International Society for Animal Rights.

I am charging this committee to focus specifically on allegations concerning the Zoo's water system (see particularly Items 21–27); and Item 30 concerning the diet, particularly the allegation of improper thawing of fish. I would also like attention given to allegations concerning the care of both dolphins and whales *Items 33–39 for dolphins need to be specifically addressed). * * *

I must impress upon all of you that it will be important for the Minnesota Zoo to make some statement about these allegations, * * *.

substantial responsibility for or control over the conduct of government affairs * * * [such] that *the public has an independent interest in the qualifications and performance of the person * * * beyond the general public interest in the qualifications or performance of all government employees * * *.*

*Rosenblatt v. Baer,* 383 U.S. 75, 85–86, 86 S.Ct. 669, 675–76, 15 L.Ed.2d 597 (1966) (emphasis added).

 Notwithstanding McDevitt's input into zoo policy and his control over the whale programs, the record does not manifest an independent interest by the public in McDevitt's qualifications over and above other government employees.

On the basis of the record before us, we cannot say that the trial court erred in ruling McDevitt was not a public figure. We agree the alleged defamatory statements concerned a matter of public interest which garnered extensive media coverage. The record shows the zoo's beluga whale program, the injury to Big Mouth, and its resultant controversy attracted thousands of visitors to the zoo and substantial public attention. However, that does not automatically raise McDevitt from a private to a public figure for purposes of which standard to apply in a case of defamation. For purposes of summary judgment, we agree with the trial court that the record does not support a finding, as a matter of law, that McDevitt assumed a role of special prominence in the affairs of society or thrust himself to the forefront of a controversy to influence the resolution of the situation. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

We affirm the trial court's denial of a grant of summary judgment to appellant. We note that after the presentation of plaintiff's case, and again at the close of all the evidence, appellant is free to move for a directed verdict and the trial court may dismiss the action before submission to a jury if the evidence taken as a whole does not reach a threshold which would support a jury verdict of defamation. *See Kulkay v. Allied Central Stores, Inc.,* 398 N.W.2d 573, 579 (Minn.Ct.App.1986) *pet. for rev.*

*denied* (Feb. 13, 1987). The trial court's denial of summary judgment was proper. McDevitt's motion to supplement the record on appeal is denied.

DECISION

Affirmed.