Richard J. LeDOUX, Respondent,

v.

NORTHWEST PUBLISHING, INC.,
d/b/a Duluth News–Tribune; et
al., Appellants.

No. C8–93–2594.

Court of Appeals of Minnesota.

Sept. 6, 1994.

Review Denied Nov. 16, 1994.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, St. Paul, and Thomas F. Andrew, Brown, Andrew, Hallenbeck, Signorelli & Zallar, Duluth, for respondent.

Marshall H. Tanick, Sholly A. Blustin, Mansfield & Tanick, P.A., Minneapolis, and John D. Kelly, Cheryl M. Prince, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, for appellants.

Considered and decided by AMUNDSON, P.J., and KALITOWSKI and HOLTAN,* JJ.

## OPINION

KALITOWSKI, Judge.

A jury found that appellants Northwest Publishing, Inc., d/b/a Duluth–News Tribune, James V. Gels, Virgil Swing, and Tom Fredrickson defamed respondent Richard J. LeDoux, a city employee, in two news articles and two editorials published in the Duluth News–Tribune. Appellants contend the trial court erred in concluding that LeDoux was a private figure and erred in denying their motion for judgment notwithstanding the verdict or, in the alternative, a new trial, with respect to the issues of: (1) whether the news articles were false; (2) whether the editorials were opinions; (3) negligence; and (4) damages. LeDoux contends the trial court erred in denying his motion for leave to amend his complaint to allege a claim of punitive damages.

## FACTS

The city of Duluth employed LeDoux as the Street and Traffic Control Maintenance

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-pointment pursuant to Minn. Const. art. VI, § 10.

Supervisor for the downtown district. His job duties included supervising approximately 30 full-time employees and 16–20 additional seasonal employees who removed snow, and repaired and maintained streets in his district. LeDoux also had occasional contact with members of the public through telephone calls from individuals who contacted him regarding problems or concerns with roads within his district.

In 1984, LeDoux built a home in Duluth on Covent Place, a 12–foot wide red clay road covered with gravel. The road was damaged when the city installed the water main and sanitary sewers. From 1984 through spring 1989, the city attempted to repair the road by dumping pit run gravel, slag, class five gravel and limestone on top of the red clay. In spring 1989, LeDoux suggested to his supervisor, the manager of the Streets and Parks Maintenance Division, that the city repair Covent Place with asphalt shavings. Because the use of asphalt shavings was considered routine road maintenance, homeowners were not assessed for having asphalt shavings applied to their roads. LeDoux's supervisor approved use of asphalt shavings on Covent Place.

In August 1989, LeDoux temporarily assumed some of the duties of his supervisor, who was on vacation. LeDoux had authority to make "operational decisions necessary to keep the Streets and Parks Maintenance Division working." On August 2, 1989, LeDoux and the supervisor of Covent Place's district arranged to repair the road with asphalt shavings. The road repair was supervised by LeDoux's assistant.

On August 3, 1989, the News–Tribune published an article entitled "City crew resurfaces boss's road." As a result of the article, LeDoux was suspended with pay pending an investigation by Richard Larson, the city's Director of Public Works. The director issued a report that concluded the repair work on Covent Place "created the public appearance of impropriety." The city suspended LeDoux, without pay, for 14 days and demoted him to the position of light equipment operator. From August 4, 1989, to August 18, 1989, the News–Tribune published ten articles and editorials regarding the city's investigation and LeDoux's suspension and demotion.

Subsequently, the city investigated a business which was co-owned by LeDoux in the early 1980's and had sold used equipment and surplus supplies to the city. The investigation concluded that LeDoux had not acted criminally or dishonestly, and that the sales had been for fair prices. LeDoux, however, violated a provision of the city charter which proscribes municipal employees from engaging in business transactions with the city. The city fired LeDoux for violating this charter provision. From September 6, 1989, to September 17, 1989, the News–Tribune published four articles and editorials regarding LeDoux's discharge.

LeDoux filed a grievance alleging that his demotion was not for just cause. Following an arbitration hearing, Arbitrator Mario F. Bognanno sustained LeDoux's grievance and reinstated him to his position of Street Maintenance Supervisor. LeDoux also filed a grievance challenging his discharge for violating the charter provision. Following a separate arbitration hearing, Arbitrator Thomas P. Gallagher sustained LeDoux's grievance and ordered the city to reinstate him to his position of Street Maintenance Supervisor. From February 8, 1990, to May 21, 1990, the News–Tribune published four articles and editorials regarding LeDoux's grievances.

The city appealed both arbitrators' decisions. The district court denied the city's motion to vacate Arbitrator Bognanno's decision, but granted the city's motion to vacate Arbitrator Gallagher's decision. LeDoux appealed the district court's order vacating Arbitrator Gallagher's award and this court reversed the district court's decision on March 26, 1991. The supreme court denied the city's petition for further review.

Following this court's decision, the News–Tribune published one article and one editorial. First, on March 27, 1991, the News–Tribune published an article entitled "Court overturns judge's ruling, clears way for LeDoux to return." The article stated that LeDoux was demoted from his job after the News–Tribune reported that "a city crew

paved the street where he owned the only home." Second, on March 28, 1991, the News–Tribune published an editorial on the opinion page entitled "Firing case dilutes charter." The editorial criticized this court's ruling reinstating LeDoux, described his work conduct as "wanton" and "disgraceful," and characterized his demotion as "kind treatment." The editorial also stated that LeDoux ordered city crews "to grade and resurface" Covent Place.

LeDoux reported to work on May 15, 1991. On May 16, 1991, the city informed LeDoux that his position had been eliminated. LeDoux sued the city and, following a bench trial, the district court ordered the city to reinstate LeDoux as the supervisor of the downtown district or in a comparable supervisory position, and awarded LeDoux back pay.

Following the district court's decision, the News–Tribune published one article and one editorial. First, on April 17, 1992, the News–Tribune published an article entitled "Fired city supervisor gets job back with back pay." The article stated that LeDoux had supervised a city crew "paving" Covent Place. Second, on April 19, 1992, the News–Tribune published an editorial on the opinion page entitled "Redo rules to end job abuse." The editorial stated that someone who abuses the public trust and misuses public employees and equipment should lose their job. It concluded that "[t]his horse has already snuck back into the barn and is again eating the taxpayers' hay."

Pursuant to Minn.Stat. § 548.06, LeDoux demanded retraction of the two articles and two editorials published on March 27, 1991, March 28, 1991, April 17, 1992, and April 19, 1992. Appellants rejected LeDoux's demand for retraction and LeDoux brought this defamation claim against appellants.

The trial court denied appellants' motion for summary judgment and determined that LeDoux was not a public official. Following a trial, the jury found that: (1) appellants defamed LeDoux by statements published in the news articles of March 27, 1991, or April 17, 1992, and by statements published in the editorials of March 28, 1991, or April 19, 1992; (2) the statements were false; (3) ap-

pellants were negligent in publishing such statements; and (4) the published statements were a direct cause of damage to LeDoux. The jury awarded LeDoux damages in the amount of $676,000.

The trial court denied appellants' posttrial motions for judgment notwithstanding the verdict or, in the alternative, a new trial, and awarded costs in the amount of $300 and preverdict interest in the amount of $26,195. Appellants contend the trial court erred in concluding that LeDoux was a private figure, and in denying appellants' motion for JNOV or new trial on the issues of: (1) whether the news articles were false; (2) whether the editorials were opinions; (3) negligence; and (4) damages. LeDoux contends the trial court abused its discretion in denying his motion for leave to amend his complaint to allege a claim of punitive damages.

### ISSUES

1. Did the trial court err in concluding that LeDoux was a private figure?

2. Did the trial court err in concluding that appellants could be liable under defamation law for statements in the editorials?

3. Did the trial court err in denying appellants' motion for JNOV or new trial on the issue of: (1) whether the news articles or editorials were false; and (2) whether the news articles were defamatory?

4. Did the trial court err in denying appellants' motion for JNOV or new trial on the issue of whether appellants negligently published the news articles or editorials?

5. Did the trial court err in denying appellants' motion for JNOV or new trial on the issue of damages?

6. Does upholding the jury's finding of defamation unconstitutionally intrude on the field of free expression?

7. Did the trial court abuse its discretion in denying LeDoux's motion for leave to amend the complaint to allege a claim for punitive damages?

## ANALYSIS

██ We will reverse the trial court's denial of a motion for a new trial only upon a "showing of clear abuse of discretion or if conduct was so prejudicial that it would be unjust to allow the result to stand." *Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 352 (Minn.1981). In reviewing a JNOV, we apply the same standard as the trial court did in passing on the jury verdict. *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 14 (Minn.1979). The evidence and inferences must be viewed in the light most favorable to the jury. *Bergemann v. Mutual Serv. Ins. Co.,* 270 N.W.2d 107, 109 (Minn.1978).

### I.

██ A state court cannot award damages to a public official or public figure for defamation unless the plaintiff proves actual malice. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) (public official); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967) (public figure). A private individual, however, may recover damages by showing that the defendants were merely negligent when they made false statements. *Britton v. Koep,* 470 N.W.2d 518, 520 (Minn.1991) (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). The determination of the plaintiff's public or private status is a question of law that we review de novo. *Id.*

██ Appellants contend LeDoux was a public official within the meaning of the standard established in *New York Times.* The "public official" designation applies to a person who is

> in a position significantly to influence the resolution of [public] issues * * * who [has], or appears to the public to have, substantial responsibility for or control over the conduct of government affairs * * * [such] that *the public has an independent interest in the qualifications and performance of the person * * * beyond the general public interest in the qualifications or performance of all government employees.*

*McDevitt v. Tilson,* 453 N.W.2d 53, 57–58 (Minn.App.1990) (quoting *Rosenblatt v. Baer,* 383 U.S. 75, 85–86, 86 S.Ct. 669, 675–76, 15 L.Ed.2d 597 (1966), *pet. for rev. denied* (Minn. May 23, 1990) (emphasis and alterations in *McDevitt*).

The evidence demonstrates that the city employed LeDoux as the Street and Traffic Control Maintenance Supervisor for the downtown district, a position he obtained through the Civil Service process of testing and interviewing. LeDoux supervised approximately 30 full-time employees and 16–20 additional seasonal employees who removed snow, and repaired and maintained streets in his district. LeDoux had only occasional contact with members of the public through telephone calls from individuals who contacted him to express concerns regarding roads within his district.

In August 1989, LeDoux temporarily assumed some of the duties of his supervisor, the manager of the Streets and Parks Maintenance Division. The evidence indicates that a district supervisor who assumed the manager's duties only assumed the "day-to-day * * * operational decisions necessary to keep the Streets and Parks Maintenance Division working" and was not involved with "higher level policy matters like setting up budget." Because there is no evidence that the public had an independent interest in the qualifications and performance of LeDoux beyond the general public interest in the qualifications or performance of all governmental employees, we conclude LeDoux was not a public official. *See McDevitt,* 453 N.W.2d at 57–58.

██ Appellants also contend LeDoux was a public figure within the meaning of the standard established in *Gertz.* The Minnesota Supreme Court summarized the three categories of public figures as follows:

> The first group includes the rare "involuntary" public figure. The next category essentially contained celebrities and prominent social figures who are deemed public figures for "all purposes." The final group consists of limited purpose public figures who attain their position by thrusting

themselves into the vortex of a public controversy to influence its outcome. *Jadwin v. Minneapolis Star & Tribune (Jadwin I)*, 367 N.W.2d 476, 484 (Minn.1985).

Appellants argue that LeDoux is a public figure because he "held an especially prominent role in local government." Because the evidence demonstrates that LeDoux was employed as only one of five Street and Traffic Control Maintenance Supervisors, and, at the most, was involved in operational decisions regarding street maintenance, we conclude that LeDoux was not a celebrity or prominent social figure, and did not have a prominent role in local government.

■ Appellants also argue that, because LeDoux voluntarily engaged in two arbitration hearings and two lawsuits in order to overturn his demotion and termination and reclaim his job, he "voluntarily thrust himself forward in an attempt to influence the outcome of a public controversy." A matter of public interest that results in extensive media coverage, however, does not automatically elevate LeDoux from a private to a public figure. By engaging in litigation to protect his interests, LeDoux did not assume a role of special prominence in the affairs of society or thrust himself to the forefront of a controversy to influence its outcome. *See McDevitt*, 453 N.W.2d at 58. Accordingly, we conclude LeDoux is not a public figure.

## II.

Appellants contend that statements contained in the two editorials were opinions and therefore absolutely protected by the first amendment. Prior to *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), both federal and state courts had interpreted *Gertz*, 418 U.S. 323, 94 S.Ct. 2997, to hold that all statements of opinion were absolutely privileged under the First Amendment. *See, e.g., Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986); *Diesen v. Hessburg*, 455 N.W.2d 446, 450 (Minn.1990), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991). In *Milkovich*, however, the supreme court determined that freedom of expression "is adequately secured

by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and fact." *Milkovich*, 497 U.S. at 19, 110 S.Ct. at 2706.

■ Although opinions are not absolutely protected by the First Amendment, the following factors must be considered before a media defendant can be liable under state defamation law for statements involving a private figure on matters of public concern. First, the statements must be provable as false. *Id.* (citing *Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986)). Second, the statements must reasonably be interpreted as stating actual facts about the individual. *Id.* (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988)). Because the jury found appellants defamed LeDoux "by any statements published in the editorials of March 28, 1991, *or* April 19, 1992," we need only conclude that appellants could be liable for statements in one of the editorials. (Emphasis added.) The April 19, 1992, editorial stated, in part, that:

> If someone used his employer's equipment and workers to build his garage on company time, would he keep his job when it came out?
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> LeDoux didn't use private equipment and workers to build his garage. He used public equipment and workers to improve a street on which he owned the only house.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> If someone abuses the public trust and misuses public employees and equipment, they should lose their job.
>
> There's probably no use for the city to pursue this case any further. This horse has snuck back into the barn and is again eating the taxpayers' hay.

We conclude that a reasonable person could find the statements in the April 19, 1992, editorial imply LeDoux engaged in criminal conduct by stealing from the city. *See id.* 497 U.S. at 21, 110 S.Ct. at 2707 (holding that a reasonable fact finder could conclude statements in the newspaper im-

plied Milkovich committed perjury). First, the connotation that LeDoux committed a theft "is sufficiently factual to be susceptible of being proved true or false." *Id.* Second, because neither the tenor nor the content of the editorial negates the impression that the author seriously maintained LeDoux committed the crime of theft, the statements can reasonably be interpreted as stating actual facts about LeDoux. *Id.* Accordingly, we conclude that appellants could be liable, as a matter of law, under state defamation law for statements in the April 19, 1992, editorial and that the trial court therefore properly presented the issue to the jury.

### III.

▌ In order for a statement to be defamatory,

it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community.

*Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980) (citing Restatement (Second) of Torts §§ 558–59 (1977); W. Prosser, *Handbook of the Law of Torts* § 111 at 739 (4th ed. 1971)). Appellants contend the trial court erred in denying their motion for JNOV or new trial because: (1) the news articles and editorials were substantially accurate; and (2) the news articles are not defamatory as a matter of law.

### 1. False Statements

▌ The truth or falsity of a statement is inherently within the province of the jury and will not be overturned unless "the finding is manifestly and palpably contrary to the evidence." *Lewis v. Equitable Life Assurance Soc'y of the United States,* 389 N.W.2d 876, 889 (Minn.1986). Where there is no dispute as to the underlying facts, however, the question of whether a statement is substantially accurate is one of law for the court. *Jadwin v. Minneapolis Star & Tribune Co. (Jadwin II),* 390 N.W.2d 437, 441 (Minn.App.1986).

#### a. News Articles

LeDoux claims defamation based on two statements in the news articles. The March 27, 1991, article stated, in part, that:

LeDoux was demoted from his $42,612–per–year job after the News–Tribune reported that a city crew *paved* the street where he owned the only home.

(Emphasis added.) The April 17, 1992, article stated, in part, that:

The probe [into LeDoux's co-ownership of Central Sales] was prompted by News–Tribune reports that LeDoux had supervised a city crew *paving* a street on which he owned the only home.

(Emphasis added.)

▌ We conclude the statements contained in the two news articles were not substantially accurate. The evidence demonstrates: (1) homeowners were not assessed for having asphalt shavings applied to roads because the asphalt shavings were considered routine road maintenance, whereas homeowners were assessed when roads were built, resurfaced, or paved; (2) the city operated an "overlay program" beginning in 1989, wherein homeowners petitioned to have their roads overlaid with blacktop and the city subsidized the cost; and (3) Covent Place was not paved, but covered with asphalt shavings. Because the statements in the news articles were not substantially accurate, determination of the truth or falsity of the statements was within the province of the jury. Because the jury's findings were not "manifestly and palpably contrary to the evidence," we conclude the trial court did not err in denying appellants' motion for JNOV or new trial.

#### b. Editorials

▌ LeDoux also claims defamation based on statements in the April 19, 1992, editorial that imply LeDoux engaged in criminal conduct by stealing from the city. We conclude that the statements contained in the editorial were not substantially accurate. The evidence demonstrates LeDoux's supervisor gave him permission to use asphalt shavings on Covent Place. Accordingly, the truth or falsity of the statements contained in

the editorials was within the province of the jury. Because the jury's findings were not "manifestly and palpably contrary to the evidence," we conclude the trial court did not err in denying appellants' motion for JNOV or new trial.

### 2. Defamatory Statements

■ A statement is defamatory if it causes enough harm to a person's reputation to lower the community's estimation of the individual or to deter others from associating or dealing with the individual. *Weissman v. Sri Lanka Curry House,* 469 N.W.2d 471, 473 (Minn.App.1991). If the words are capable of a defamatory meaning, it is for the jury to decide whether they were actually defamatory. *Utecht v. Shopko Dep't Store,* 324 N.W.2d 652, 654 (Minn.1982). Here, appellants contend the two news articles were not defamatory because "[t]he articles are *favorable* to [LeDoux] and report his triumphs, describing how he prevailed in his two legal actions against the City." (Emphasis in original.)

■ Because the news article implied improper conduct by LeDoux, a jury reasonably could conclude that the articles harmed LeDoux's reputation. Moreover, the evidence indicates that after the news articles were published, individuals called LeDoux a thief and refused to speak with him. Accordingly, a jury reasonably could conclude that the false statements in the news articles were defamatory.

### IV.

■ Appellants contend the trial court erred in denying their motion for JNOV or new trial because LeDoux failed to show appellants negligently published the news articles and editorials. As noted above, because we conclude LeDoux is a private individual, he may recover damages by showing that appellants were merely negligent when they made false statements. *Britton,* 470 N.W.2d at 520. The defendant's conduct is judged on whether the conduct was that of a reasonable person under similar circumstances. *Jadwin I,* 367 N.W.2d at 491. Whether the defendant was negligent is a question for the jury. *Thorson v. Albert Lea Publishing Co.,* 190 Minn. 200, 207, 251 N.W. 177, 180 (1933).

### 1. News Articles

■ Arbitrator Bognanno's opinion stated that appellants' initial articles inaccurately reported that Covent Place was either paved or resurfaced. Although the record demonstrates that appellants read this opinion, appellants subsequently published the two news articles, which claimed: (1) "the city crew *paved* Covent Place"; and (2) "LeDoux had supervised a city crew *paving*" Covent Place. (Emphasis added.) Because appellants had been put on notice of the inaccuracy of the use of the term "paved," we conclude that a jury reasonably could find that appellants negligently published the two news articles.

### 2. Editorials

■ Arbitrator Bognanno's opinion stated that LeDoux's supervisor gave him permission to use asphalt shavings on Covent Place. Nevertheless, appellants subsequently published the April 19, 1992, editorial, which implies LeDoux engaged in criminal conduct. Appellants' expert testified that appellants' editorials were fair expressions of editorial opinion within journalistic standards. Although customs and practices within the profession are relevant in applying the negligence standard, custom is not controlling. *Jadwin I,* 367 N.W.2d at 491–92. Moreover, opinions of expert witnesses are not binding upon the jury and are only items of evidence to be considered along with other evidence in the case. *LaValle v. Aqualand Pool Co.,* 257 N.W.2d 324, 328 (Minn.1977). Accordingly, we conclude that based on the evidence in the record a jury reasonably could find that appellants negligently published the April 19, 1992, editorial.

### V.

■ Appellants contend the trial court erred in denying their motion for JNOV or new trial on the issue of damages. The decision whether to grant or deny a new trial based on excessive damages will not be dis-

turbed absent an abuse of discretion. *Advanced Training Sys. v. Caswell Equip. Co.,* 352 N.W.2d 1, 11 (Minn.1984). We will not disturb a damage award "unless its failure to do so would be shocking or would result in plain injustice." *Hughes v. Sinclair Mktg.,* 389 N.W.2d 194, 199 (Minn.1986).

■ Appellants argue that the jury's award of damages was unsupported by the evidence because LeDoux suffered no financial loss or tangible harm as a result of the news articles and editorials, and because he failed to show that the published statements were a direct cause of his damage. The evidence, however, demonstrates that LeDoux: (1) felt "devastated" after reading the editorials published by appellants; (2) has difficulty sleeping, digestive problems, headaches, nausea, vomiting, and chest pains; (3) contemplated committing suicide and sought counseling because the "newspaper articles kept coming and coming"; (4) withdrew from his sons and became more moody; and (5) attempts to avoid being identified in public or at work, for fear of embarrassment. We conclude a reasonable jury could find that LeDoux was harmed and that the published statements were a direct cause of LeDoux's damages. Accordingly, the trial court did not err in refusing to disturb the jury's damage award.

## VI.

■ [I]n cases raising First Amendment issues * * * an appellate court has an obligation to "make an independent examination of the whole record" in order to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression."

*Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting *Sullivan,* 376 U.S. at 284–86, 84 S.Ct. at 728–29). We recognize that the First Amendment is a vital guarantee of free and uninhibited discussion of public issues. *Milkovich,* 497 U.S. at 22, 110 S.Ct. at 2707. Society, however, "has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt,* 383 U.S. at 86, 86 S.Ct. at 676. On this record, we conclude that up-

holding the jury's finding of defamation does not unconstitutionally intrude on the field of free expression.

## VII.

■ LeDoux contends the trial court abused its discretion in denying his motion for leave to amend the complaint to allege a claim of punitive damages. We will not reverse the trial court's decision to grant or deny a motion to add a claim for punitive damages absent an abuse of discretion. *Metag v. K–Mart Corp.,* 385 N.W.2d 864, 867 (Minn.App.1986), *pet. for rev. denied* (Minn. June 23, 1986).

■ "After filing the suit a party may make a motion to amend the pleadings to claim punitive damages." Minn.Stat. § 549.191 (1992). If the trial court finds prima facie evidence that supports the plaintiff's claim for punitive damages, it must grant leave to amend. *Id.* A claim for punitive damages may be allowed, however, "only upon clear and convincing evidence that the acts of the defendant showed deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a) (1992). Although the evidence supports the jury finding that appellants acted negligently, we conclude the evidence is not clear and convincing that appellants acted with deliberate disregard for LeDoux's rights. Accordingly, we conclude the trial court did not err in denying LeDoux's motion to amend the pleadings.

## DECISION

The trial court did not err in concluding that LeDoux was a private figure and that opinions are not absolutely protected by the First Amendment. The trial court also did not err in denying appellants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial, because a jury reasonably could find that: (1) the news articles and editorials were false; (2) the news articles and editorials were defamatory; (3) appellants negligently published the news articles and editorials; and (4) LeDoux was harmed and the published statements were a direct cause of LeDoux's damages. Finally, the trial court did not err in denying Le-

Doux's motion for leave to amend his complaint to allege a claim of punitive damages.

**Affirmed.**