OPINION
STRAS, Justice.
This case involves two questions arising out of the City of Rochester’s selection of a contractor to run its municipal bus service. The first question requires us to determine the appropriate standard of review for an award of a government contract through a “best value” bidding process, a method by which a government contractor is selected by weighing various quantitative and qualitative factors. The second question is whether the district court properly granted summary judgment to the City of Rochester on appellant Rochester City Lines’s claims of unfair bias and favoritism in awarding the contract to another bidder. Because we conclude that the district court properly granted summary judgment on each of Rochester City Lines’s claims, except the general claim that the City of Rochester acted unreasonably, arbitrarily, or capriciously in awarding the contract to another party, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.
I.
For more than 30 years, Rochester City Lines, Co. (“RCL”) operated the municipal bus service in Rochester. Although the City of Rochester (“City”) owns the buses, bus-stop shelters, and other equipment, it contracted with RCL to operate the bus service through a series of annual contracts. The City subsidized the operation through the receipt of state and federal grants.
In 2011, the Federal Transit Administration (“FTA”) sent the City a series of letters in which it informed the City that, in order to comply with federal procurement requirements and continue to receive federal funding, the City needed to initiate a competitive bidding process for its next contract. The City, which was receiving approximately $1.6 million annually in FTA funding, complied with the FTA’s direction and issued a Request for Proposals (“RFP”) in December 2011. Following the methodology of the FTA’s guidance documents, the RFP stated that the City would use a “best value” bidding process to select the proposal that presented “the highest quality of service that best matche[d] the City’s requirements,” based on a set of predetermined criteria. RCL filed a formal “bid protest” in an attempt to stop the bidding process, claiming that the City’s actions were an unconstitutional taking of RCL’s property. The bid protest failed, and RCL filed a lawsuit against the City.
RCL again unsuccessfully attempted to stop the bidding process, this time by filing a motion for a temporary injunction with the district court. The competitive-bidding process continued, and the City received responsive bids from RCL and three other companies. An evaluation committee, consisting of four City employees and four outside reviewers, determined that the bid submitted by First Transit, *658 Inc., a national bus-transportation company, presented the best value for the City. The Rochester City Council followed the committee’s recommendation and awarded the contract to First Transit on April 2, 2012.
After the City finalized its selection of First Transit, RCL filed another formal bid protest. The City Attorney, acting under the terms of the RFP, denied RCL’s protest, and the City Council affirmed his decision. RCL subsequently amended its complaint to add claims against the City, members of the City Council, and First Transit, including a claim seeking a declaration that the bidding process was unlawful. RCL also sued a member of the City Council for defamation. In the meantime, First Transit began operating Rochester’s municipal bus service on July 2, 2012. Unable to compete with a federally subsidized operation, RCL ended its fixed-route service in Rochester the following day.
In November 2012, the district court granted summary judgment to the respondents, including the City, on each of RCL’s claims. The court of appeals affirmed. Rochester City Lines, Co. v. City of Rochester, 846 N.W.2d 444 (Minn.App.2014). We granted RCL’s petition for review to resolve two issues: (1) the applicable standard of review of a “best value” competitive bidding process; and (2) whether the district court erred when it granted summary judgment to the City on RCL’s bid-protest claims. We denied review of all other issues decided by the court of appeals.[1]
II.
The first question presented in this case requires us to identify the standard of review applicable to a best-value bidding process used by a municipality or other political subdivision of the state. Best-value bidding, as described by the FTA, is a procedure by which the award of a government contract depends on “which proposal represents the ‘best value’ [based] on an analysis of the tradeoff of qualitative technical factors and price or cost factors.” U.S. Dep’t of Transp., Third-Party Contracting Guidance, FTA Circular 4220.1F, VI-10 (Nov. 1, 2008, rev. Mar. 18, 2013) (hereinafter “FTA Guidance”); see also Sayer v. Minn. Dep’t of Transp., 790 N.W.2d 151, 156 (Minn.2010) (recognizing that the “best-value process differs from the lowest responsible bid process in that it allows public agencies to consider factors other than cost when awarding contracts”). Here, in accordance with the FTA Guidance, the City adopted best-value bidding in its RFP and described it as
a selection process in which proposals contain both price and qualitative components, and award is based upon a combination of price and qualitative considerations. Qualitative considerations may include technical design, technical approach, quality of proposed personnel, and/or management plan. The award selection is based upon consideration of a combination of technical and price factors to determine (or derive) the offer deemed most advantageous and of the greatest value to the procuring agency.
Before the Legislature authorized best-value bidding for public construction projects in 2007, the dominant procedure in Minnesota for government procurement was the lowest-responsible-bidder process.[2] Although public entities rarely used *659 the best-value process prior to 2007, orn-eases have never distinguished between the various methods of bidding when discussing the basic principles that guide our review of cases involving government contracts. To the contrary, “[i]rrespective of what lawful method is adopted or used in the letting of public contracts, it is for the courts to determine whether officials in the exercise of their discretion have applied the method used in an arbitrary, capricious, or unreasonable manner.” Griswold v. Ramsey Cty., 242 Minn. 529, 535, 65 N.W.2d 647, 651-52 (1954).
In Griswold, the Ramsey County Board allocated money for construction of a county jail and released design specifications in advance of the bidding. See id. at 531, 65 N.W.2d at 649. Because all of the submitted bids exceeded the amount of money allocated for the jail, however, the Board asked each bidder to subtract from its basic bid the cost of certain items contained in the construction specifications. See id. These alternative bids allowed the County to proceed with part of the construction and then finish the remainder of the jail once funds became available. See id. at 531-32, 65 N.W.2d at 650. As it turned out, the County was able to find additional funds for the jail prior to the construction, and it allocated those funds toward the completion of some of the items listed in the winning bidder’s alternative bid. See id. at 532, 65 N.W.2d at 650.
Two taxpayers sued the County, arguing that the bidding process adopted by the County was unlawful. See id. at 532, 65 N.W.2d at 650. In addressing the procedures adopted by the County, we noted that no statute required the Board to adopt a competitive-bidding process because, based on Ramsey County’s population, the applicable statutes required competitive bidding only for the procurement of goods, materials, and supplies, not for the construction of public buildings. See id. at 533, 65 N.W.2d at 650. Nevertheless, even in the absence of a statutory mandate, we held that once the County adopted a lawful method for selecting a contractor, it had to give “all contractors an equal opportunity to bid” and not pursue its chosen method “in an unreasonable, arbitrary, or capricious manner.” Id. at 535, 65 N.W.2d at 652. We then concluded that the alternative-bidding process that the Board adopted was unreasonable, arbitrary, and capricious because it allowed bidders to make material changes to then-bids after the bidding had closed. See id. at 536, 65 N.W.2d at 652.
Griswold stands for the proposition that, in the absence of a statutory standard and regardless of the method of bidding selected by a public agency, “it is for the courts to determine whether officials in the exercise of their discretion have applied the method used in an arbitrary, capricious, or unreasonable manner” upon receiving a proper challenge. Id. at 535, 65 N.W.2d at 651-52; see also Tel. Assocs., Inc. v. Saint Louis Cty. Bd., 350 N.W.2d 398, 400 (Minn.App.1984) (applying the unreasonable, arbitrary, and capricious standard to a best-value bidding process), aff'd, 364 N.W.2d 378, 381-82 (Minn.1985). In this case, as in Griswold, there is no statute that required the City to award the municipal-bus-service contract based on any specified bidding process, nor is there any statute that addresses our standard of review. The contract is exempt from the Uniform Municipal Con *660 tracting Law, Minn.Stat. § 471.345, subd. 2 (2014), because it does not fall within the statute’s definition of “contract.” See Hubbard Broad., Inc. v. Metro. Sports Facilities Comm’n, 381 N.W.2d 842, 846-47 (Minn.1986). The Minnesota Administrative Procedure Act is also inapplicable because municipalities are not included within its scope. See Minn.Stat. § 14.02, subd. 2 (2014) (defining “agency” to include only those entities with statewide jurisdiction). Accordingly, in the absence of a statutory standard, Griswold provides the standard, of review for best-value-bidding processes.
The primary disagreement among the parties is the level of scrutiny required by Griswold. RCL interprets Griswold as requiring courts to exercise robust judicial review to invalidate any excessive exercise of discretion by a public agency, even in best-value bidding. The City and First Transit, in contrast, argue that Griswold requires courts to defer to value judgments made in weighing the subjective factors in best-value bidding, such that only “significant errors” that draw into doubt the overall fairness of the process and the good faith of the public agency would warrant intervention by a court. The court of appeals announced yet a third approach, largely disconnected from Gris-wold, that adopted what it referred to as “principles of common-law competitive-bidding,” but only when those principles are consistent with best-value bidding processes. Rochester City Lines, 846 N.W.2d at 455. Neither the parties nor the court of appeals accurately describes our standard of review.
We have long applied the standard of review identified in Griswold to judicial review of various agency actions, including actions taken by municipalities and other political subdivisions. See, e.g., Carl Bolander & Sons v. City of Minneapolis, 502 N.W.2d 203, 207 (Minn.1993) (applying the unreasonable, arbitrary, or capricious standard of review to a city’s decision to require an Environmental Assessment Worksheet before approving a project). In general terms, we have described an agency action as arbitrary and capricious if it represented an exercise of the agency’s “will” rather than its “judgment.” Markwardt v. State, Water Res. Bd., 254 N.W.2d 371, 374 (Minn.1977). Although we have explained that the unreasonable, arbitrary, and capricious standard is “non-intrusive,” Dietz v. Dodge Cty., 487 N.W.2d 237, 239 (Minn.1992), Griswold says that any procedure that “emasculates the safeguards of competitive bidding” invalidates the process and the contract, 242 Minn. at 536, 65 N.W.2d at 652. The essential safeguard of competitive bidding is, as we stated in Griswold, to “limit the discretion of contract-making officials” to prevent “such abuses as fraud, favoritism, improvidence and extravagance.” Id. The standard, in other words, requires courts to examine the bidding procedures to ensure that they provide a fair process and incorporate sufficient controls to safeguard against abuses, see Griswold, 242 Minn. at 536, 65 N.W.2d at 652, but it does not allow courts to substitute their judgments for those of public officials, Vill. of Edina v. Joseph, 264 Minn. 84, 93, 119 N.W.2d 809, 815 (1962).
In the area of government contracts, federal courts have developed standards to guide the exercise of judicial review over procurement decisions by federal agencies. See, e.g., PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed.Cir.2010). The federal standards ensure that a government agency acts in good faith, not as a pretense “to let the contract to some favored bidder,” and selects the bid that is “most advantageous to the Government.” Heyer Prods. Co. v. United States, 140 F.Supp. 409, 414 (1956). In conducting a review of *661 competitive-bidding processes, federal courts look to the following factors to determine whether a government agency’s actions were arbitrary and capricious:
subjective bad faith on the part of the officials; the absence of a reasonable basis for the administrative decision; the amount of discretion entrusted to the procurement officials by applicable statutes and regulations; and proven violation of pertinent statutes or regulations.
Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed.Cir.1988). Not all of the factors need to be present to establish arbitrary and capricious behavior by a government agency, and the application of the factors depends on the facts of each case. Id. Because the federal standards have the same basic objectives of eliminating favoritism and fraud in procurement decisions and ensuring the good-faith conduct of government officials in securing government contracts, they are instructive in determining whether the acts of a municipality or other political subdivision are unreasonable, arbitrary, or capricious under Griswold.
Accordingly, we hold that the unreasonable, arbitrary, or capricious standard adopted in Griswold is the appropriate standard for reviewing a city’s or county’s decision to award a government contract after a “best value” bidding process.
III.
The second question in this case requires us to determine, based on Griswold and the evidence presented to the district court at the summary-judgment stage, whether the district court erred when it granted summary judgment to the City and First Transit. As relevant here, the district court found that various irregularities during the bidding process did not rise to the level of arbitrary or capricious behavior by the City. It therefore concluded that, even after drawing all inferences in RCL’s favor, there were no genuine issues of material fact for trial. In affirming the district court’s grant of summary judgment, the court of appeals reached the same conclusion. Rochester City Lines, 846 N.W.2d at 462.
We review a district court’s grant of summary judgment de novo to determine (1) whether there are any genuine issues of material fact, and (2) whether the district court correctly applied the law. Mattson Ridge, LLC v. Clear Roek Title, LLP, 824 N.W.2d 622, 627 (Minn.2012). A fact is material “if its resolution will affect the outcome of a case.” O’Malley v. Ulland Bros., 549 N.W.2d 889, 892 (Minn.1996). At the summary-judgment stage, we view the evidence in the light most favorable to the nonmoving party — here, RCL — and resolve all doubts and factual inferences against the moving parties— here, the City and First Transit. Nord v. Herreid, 305 N.W.2d 337, 339 (Minn.1981).
We can sort RCL’s claims into four general categories. The first two include challenges to the terms of the RFP and the procedures undertaken by the City in' addressing the bid protest. RCL’s third claim alleges that an “organizational conflict of interest” on the part of First Transit, the winning bidder, contaminated the entire process. RCL’s final claim is that the cumulative irregularities in the bidding process rendered the City’s actions arbitrary, capricious, or unreasonable. We address each of RCL’s arguments in turn.
A.
RCL’s first claim relates to the terms of the RFP, which it characterizes as “excessive.” Specifically, RCL argues that the requirements • for cash reserves were “unreasonable” and that the company’s successful operations made it unneces *662 sary and unfair for it, as the incumbent contractor, to have to obtain outside references.
Regardless of the merits of RCL’s argument, it has forfeited this claim by failing to raise it in accordance with the pre-bid protest procedures outlined in the RFP. According to the RFP, “[pjrotests regarding any aspect of the RFP document, attached materials, and [the City’s] selection procedures must be submitted in writing prior to the proposal opening date and time.” RCL submitted a pre-bid protest, but as RCL concedes, its protest was limited to the claim that opening the contract for public bidding constituted an unconstitutional taking of its property. Nowhere in the documents submitted to the City prior to the bidding did RCL object to any of the contractor qualifications as unreasonable or excessive. Indeed, once the City denied RCL’s pre-bid protest, RCL submitted a responsive bid to the City. As a federal district court in Minnesota recently observed, “[contractors ‘cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive an award and then, if unsuccessful, claim the solicitation was infirm.’ ” C.S. McCrossan Constr., Inc. v. Minn. Dep’t of Transp., 946 F.Supp.2d 851, 862 n. 17 (D.Minn.2013) (quoting Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1314 (Fed.Cir.2007)). Accordingly, by failing to use the administrative procedure provided by the City, RCL forfeited its challenge to the terms of the RFP.
B.
RCL’s second claim alleges that the City Attorney, the individual who made the initial determination to deny RCL’s bid-protest filings, was biased. The source of the City Attorney’s' bias, according to RCL, is that, by advising and counseling the City on the RFP and the bidding process, the City Attorney had an inherent conflict of interest that disqualified him from making a decision, preliminary or otherwise, on RCL’s bid protests.
RCL characterizes the City’s denials of its bid-protest filings as quasi-judicial decisions. However, rather than seeking a writ of certiorari from the City’s decisions in the court of appeals, as required by statute, RCL instead filed an action in Olmsted County District Court. See Minn.Stat. § 606.01 (2014). To the extent that RCL challenges the City’s quasi-judicial decisions in the current action, those challenges were never properly before the district court because such decisions are reviewable only by writ of certio-rari in the court of appeals. See Cty. of Washington v. City of Oak Park Heights, 818 N.W.2d 533, 539 (Minn.2012). We agree with RCL that the City’s bid-protest denials were quasi-judicial decisions.
Broadly speaking, we have described legislative acts as those that affect the rights of the public generally, whereas quasi-judicial acts are those that affect the rights of just a few individuals. Id. We have recognized that quasi-judicial decisions share three characteristics: (1) an investigation into a disputed claim and the weighing of evidentiary facts; (2) the application of those facts to a prescribed standard; and (3) a binding decision regarding a disputed claim. Id. at 540.
As RCL acknowledges, the City investigated RCL’s claims and weighed the facts under the standards contained in the RFP, the FTA Circular, and various federal statutes. For example, the City rejected some of RCL’s claims, including the claim of bias by the City Attorney, based on section 5.1.2 of the RFP, which required bidders to challenge the terms of the RFP in a pre-bid protest. After considering the facts in light of the RFP, the FTA Cireu- *663 lar, and federal-contracting statutes, the City issued a binding decision rejecting RCL’s claims. The presence of each of the three characteristics of a quasi-judicial decision means that the City’s bid-protest denials were reviewable only by writ of certiorari in the court of appeals. Id. at 539; Handicraft Block Ltd. P’ship v. City of Minneapolis, 611 N.W.2d 16, 24 (Minn. 2000) (holding that a decision by a city with all three characteristics of a quasi-judicial decision was reviewable only by the court of appeals). Accordingly, because RCL’s second claim challenges the City’s quasi-judicial decisions, the district court lacked subject matter jurisdiction to consider it.
C.
RCL’s third claim alleges that First Transit, the winning bidder, had an “organizational conflict of interest” that rendered the entire process void. Under federal law, an organizational conflict of interest exists when, “because of other activities or relationships with other persons, a person is unable or potentially unable to render impartial assistance or advice to the Government, or the person’s objectivity in performing the contract work is or might be otherwise impaired, or a person has an unfair competitive advantage.” 48 C.F.R. § 2.101 (2014). The FTA Guidance, which the City incorporated by reference in the RFP, states that an organizational conflict of interest can arise when a bidding contractor: (1) is unable to provide impartial or objective assistance to the agency; (2) has unequal access to nonpublic information; or (3) has been allowed to establish biased ground rules. See FTA Guidance, supra, at VI-5. The FTA Guidance required the City to identify and evaluate potential organizational conflicts of interest, and to take steps to avoid or mitigate them. FTA Guidance, supra, at VI-5-VT-6.
The basis for RCL’s claim that an inadequately mitigated organizational conflict of interest existed is a conversation in which a City employee told First Transit’s general manager that RCL’s operations manager, Randy Huston, was “someone who [the City] like[d] ... [,] someone who kn[ew] the operation.” RCL argues that the City gave First Transit an “unfair competitive advantage” by revealing proprietary information.
To establish an organizational conflict of interest under the second category of the FTA Guidance, a contractor must show not only that another contractor “has an unfair competitive advantage,” but also that the contractor gained such an advantage “through obtaining access to nonpublic information during the performance of an earlier contract.” FTA Guidance, supra, at VI-5; see Jacobs Tech., Inc. v. United States, 100 Fed.Cl. 198, 210 (2011). Here, it is undisputed that First Transit has never had, much less performed, another contract with the City, so RCL’s unequal-access claim cannot give rise to an organizational conflict of interest.
First Transit also did not have impaired objectivity, because there is no evidence that it assisted the City in evaluating itself or its competitors. Vantage Assocs.,' Inc. v. United States, 59 Fed.Cl. 1, 10 (2003). Nor did First Transit create biased ground rules, because it did not assist the City in setting the terms of the RFP. Id. Moreover, even if there were evidence of a conflict, there is certainly nothing to indicate that such a conflict was “so pervasive” that it would require the invalidation of the entire bidding process. See PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir.2010). In sum, nothing in the record shows, either directly or by implication, that First Transit’s activities or relation *664 ships resulted in an organizational conflict of interest.
D.
RCL’s final, “catch all” claim is that numerous irregularities in the bidding process suggest that the City’s decision to award the bus-service contract to First Transit was arbitrary, capricious, or unreasonable under Griswold.[3] Because the district court granted summary judgment to the City and First Transit on RCL’s claims, the question before us is not whether RCL will eventually prevail at trial, but whether genuine issues of material fact exist and the district court correctly applied the Griswold standard. DLH, Inc. v. Russ, 566 N.W.2d 60, 70 (Minn.1997) (“The district court’s function on a motion for summary judgment is not to decide issues of fact, but solely to determine whether genuine factual issues exist.”).
Based on Griswold, we must determine whether the evidence regarding alleged procedural irregularities, viewed in the light most favorable to RCL, would permit a fact-finder to reasonably conclude that the City’s decision to award the contract to First Transit was arbitrary, capricious, or unreasonable. See 242 Minn. at 535, 65 N.W.2d at 652. For at least two reasons, RCL has presented sufficient evidence to create a genuine issue of material fact on the question of whether the City awarded the contract to First Transit based on an unfair and biased process.
First, the record contains evidence that the interview process involved inconsistencies that might demonstrate favoritism toward First Transit. When First Transit submitted its bid, it listed two of RCL’s managers as among the personnel who would manage the bus system if it received the contract from the City. First Transit’s bid appears to have been consistent with the City’s requirement that each of the bidders make a good-faith effort to hire RCL employees if selected. However, as part of the selection process, the City also asked bidders to have their key managers attend an interview with the City’s evaluation committee. First Transit was the only bidder among the four that received permission from the City to substitute other employees for the managers it listed in its bid to represent it at the interview with the committee. Then, rather than basing its interview scores only on the personnel who actually attended the interview on behalf of each bidder, the. committee awarded points to both RCL and First Transit based on the performance of the two RCL managers during RCL’s interview. The City never informed the other bidders that it had allowed First Transit to list RCL’s managers in its bid, to bring substitute personnel to its interview, or that it had awarded points to First Transit based on the performance of RCL’s managers during RCL’s interview. Based on this evidence, RCL argues that the City violated the terms of the RFP and showed favoritism toward First Transit.
Second, RCL produced evidence that two employees of the City who had initially agreed to serve as references for RCL later refused to do so based on advice from the City. Specifically, RCL relied on evidence, obtained during discovery, that the City Attorney advised these two employees not to serve as references because it would interfere with their duties on the evaluation committee. However, despite deciding that they would no longer serve *665 as references based on the City Attorney’s advice, neither employee informed RCL of the decision to withdraw as a reference, which reduced the total number of points available to RCL on the past-performance criterion. As the district court found, these actions “effectively left RCL in the lurch” and are “objectively subject to criticism.”
Evidence of these two procedural irregularities raises the specter of pervasive bias against RCL, even if, as the dissent argues, there are other legitimate explanations for the City’s actions. At least at this stage of the case, the evidence in the record does not exclude the possibility that bias against RCL, or favoritism toward First Transit, improperly influenced the City’s bidding process. RCL is entitled to a trial on whether the City made the award arbitrarily, capriciously, or unreasonably.
In granting summary judgment to the City and First Transit, the district court improperly drew inferences against RCL and ignored contradictory evidence in the record, both of which the district court may not do on summary judgment. We have reiterated on numerous occasions that district courts are not permitted to weigh the evidence in deciding a motion for summary judgment, see, e.g., DLH, 566 N.W.2d at 70, and that any inferences must be drawn against, rather than in favor, of the moving party, see J.E.B. v. Danks, 785 N.W.2d 741, 751 (Minn.2010).
The dissent makes the same error as the district court by improperly drawing inferences in favor of the City. Even if, as the dissent argues, the relevant facts were not in dispute, the parties vigorously disagree about whether the procedural irregularities in the record are indicative of pervasive bias by the City, or alternatively, whether they were just inadvertent errors that had no relevance to the City’s bidding process. The point is that reasonable minds can disagree about the inferences that may be drawn from the record, and as we have repeatedly stated, “summary judgment is inappropriate when reasonable [people] might draw different conclusions from the evidence presented.” DLH, 566 N.W.2d at 69 & n. 6 (collecting cases).[4]
IV.
For the foregoing reasons, we affirm the judgment of the court of appeals in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
DIETZEN, J., took no part in the consideration or decision of this case.

. We denied review of RCL's takings, inverse condemnation, defamation, due process, 42 U.S.C. §§ 1983 and 1988 (2012), and 49 U.S.C. § 5323 (2012) claims,

. The Iowest-responsible-bidder process requires a public agency to release the design and specifications for a government contract in advance of bidding. See Sayer, 790 N.W.2d *659 at 155-56. Once the period for submitting a bid expires, the agency eliminates all nonconforming bids that "have a material variation from the given specifications.” Id. at 156. Of the remaining bids, the agency must award the contract to the qualifying bidder that offers to complete the contract at the lowest price. Id.

. In contrast to the City's decision to deny RCL’s bid protests, the City's decision to award the contract to First Transit was not a quasi-judicial decision, because the bidding process did not involve the resolution of a "disputed claim." See City of Oak Park Heights, 818 N.W.2d at 540.

. In focusing on just two of the factual disputes between the parties, we do not mean to suggest that none of the other issues raised by RCL establishes a genuine issue of material fact for trial. Rather, we highlight these two aspects of the case because they are illustrative of why the district court erred when it granted summary judgment to the City and First Transit on RCL’s Griswold claim.