*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0616**

Kevin Holler, et al.,
Appellants,

vs.

Hennepin County, et al.,
Respondents.

**Filed November 30, 2015
Reversed and remanded
Minge, Judge***

Hennepin County District Court
File No. 27-CV-12-19807

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, Minnesota (for appellants)

Michael O. Freeman, Hennepin County Attorney, Paul R. Hannah, Rebecca Stark Holschuh, Assistant County Attorneys, Minneapolis, Minnesota (for respondents)

        Considered and decided by Schellhas, Presiding Judge; Hooten, Judge; and Minge, Judge.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

Previously this court reversed the district court's dismissal of this defamation action and in a detailed opinion remanded for further consideration. Now appellants challenge the district court's grant of summary judgment, arguing that genuine issues of material fact exist. Because a jury could reasonably determine that those statements are defamatory, we reverse and remand.

## FACTS

Appellants Kevin and Valerie Holler owned property in north Minneapolis that respondent Hennepin County sought to acquire as part of a site for a new library. The Hollers filed a complaint alleging that respondents Hennepin County Commissioners Mark Stenglein and Mike Opat had made defamatory statements regarding the Hollers' alleged negotiation tactics relating to the acquisition of their property. They also alleged that a resolution of the Hennepin County Board of Commissioners contained defamatory statements.

The district court dismissed the action for failure to state a claim on which relief could be granted. The Hollers appealed, and this court reversed and remanded, concluding that the complaint set forth a legally sufficient claim for defamation as a reputation damaging, false declaration. *Holler v. Hennepin Cty.*, No. A13-1014, 2014 WL 349738 (Minn. App. Feb. 3, 2014), *review denied* (Minn. Apr. 15, 2014). We noted that the complaint recounted multiple statements by the commissioners that taken as a whole, together with the county board resolution, could be understood as stating that

the Hollers engaged in "manipulation of [the] process" by offering their property for sale, effectively luring the county to buy adjacent property, then receiving a fair-market offer from the county to buy their property and then, rather than being "partners with us on building a new library," they "all of a sudden . . . [took] the property off the market" and demanded that the county pay "one million [dollars] for the . . . property."

*Id.* at *1. On remand, the record was developed and respondents moved for summary judgment. The district court granted the motion, and this appeal followed.

**D E C I S I O N**

"We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014); *see* Minn. R. Civ. P. 56.03. At the summary-judgment stage, we view the evidence in the light most favorable to the nonmoving party and resolve all doubts and inferences against the moving party. *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 661 (Minn. 2015). "The district court's function on a motion for summary judgment is not to decide issues of fact, but solely to determine whether genuine factual issues exist." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).

Under Minnesota law, a statement is actionable in defamation if it is false, was communicated to a third party, and tended to harm the plaintiff's reputation or to lower that person in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). As we stated in our previous consideration of this case, opinions that imply false statements are actionable in defamation under Minnesota law.

3

*Holler*, 2014 WL 349738, at *3 (first quoting *Bradley v. Hubbard Broad., Inc.*, 471 N.W.2d 670, 674 (Minn. App. 1991) ("Defamation actions arising from communications . . . are analyzed under Minnesota common law, which makes no distinction between statements of 'fact' and 'opinion.'"), *review denied* (Minn. Aug. 2, 1991); then quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S. Ct. 2695, 2707 (1990) ("We are not persuaded that, in addition to these protections, an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment.") (other quotation and citations omitted)).

*Falsity*

The first issue we address is whether the offending statements identified by the Hollers may be actionable as false. A plaintiff in a defamation action cannot meet the burden to prove that a statement is false "by showing only that the statement is not literally true in every detail. If the statement is true in substance, inaccuracies of expression or detail are immaterial." *Jadwin v. Minneapolis Star & Tribune Co.*, 390 N.W.2d 437, 441 (Minn. App. 1986). "A statement is substantially accurate if its gist or sting is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Id.* (quotation omitted). Thus, a showing of falsity sufficient to survive summary judgment is not possible if statements reflect a "supportable interpretation" of an ambiguous underlying situation that lends itself to multiple interpretations. *Hunter v. Hartman*, 545 N.W.2d 699, 707 (Minn. App. 1996), *review denied* (Minn. June 19, 1996). Hyberbolic language is also protected by the First

4

Amendment, and "courts consider context . . . when determining whether a statement is a supportable interpretation of the event the speaker is describing." *Id*.

In *Hunter*, we affirmed summary judgment in favor of a radio, sports-talk-show personality on the ground that allegedly defamatory statements he made about a medical consultant for a sports team were hyperbolic and substantially true when taken in the context of the statements made, sports-talk radio, and the broader public issue discussed. *Id*. at 706-09. The Hollers argue that the *Hunter* doctrine applies only to statements understood as commentary and not "statements made in the 'context' of an elected official providing factual information to the media." But they provide no authority for this argument, and our previous opinion in this case recognizes that the doctrine of substantial accuracy applies to evaluate the allegedly defamatory statements made by the respondents. *See Holler*, 2014 WL 349738, at *4. We see no reason to apply a different standard to respondents' statements, which were made in the context of negotiations relating to public acquisition of private property, a situation that may give rise to varied and intricate strategies as calculating and competitive as sports. Further, we recognize that commentary by elected officials on matters of public interest is often as wide-ranging as sports-talk radio and should not be reviewed under a more exacting standard.

The district court concluded that none of respondents' statements could support an action in defamation because each statement was either true, hyperbolic, protected opinion, or a reasonable interpretation of the facts. Respondents argue that the district court did not err in its analysis and point out that our prior reinstatement of the Hollers' case does not govern the outcome of the present summary-judgment stage because the

standard for a rule-12 motion to dismiss a case for failure to state a claim is less exacting than the standard for granting summary judgment. *See Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008) (noting that standard for dismissal under Minn. R. Civ. P. 12.02(e) "is whether the complaint sets forth a legally sufficient claim for relief"). Our review of the district court's summary-judgment decision examines respondents' statements in light of the full record submitted to the district court. *See* Minn. R. Civ. P. 56 (stating that in addressing a summary-judgment motion, the district court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" submitted to the district court). To support their positions at this summary-judgment stage, the parties took depositions, engaged in other discovery, and submitted extensive documentary material. We observe that, when viewed most favorably to the Hollers, the nonmoving party, respondents' discovery efforts and submissions have not materially undermined the essence of the Hollers' claims.

*Commissioner Stenglein's statements*

The following statements are attributed to Commissioner Stenglein:

> [Statement 1:] Valerie Holler "had a sign on her house, a 'for sale' sign, as big as the IDS building, in 2007.["]

> [Statement 2:] "[S]o all of a sudden we want to buy the house and she takes the property off the market," Stenglein said, noting that the Hollers had balloons and flags around the "for sale" sign.

We agree with the district court that based on the record, Commissioner Stenglein's first statement, taken by itself, was hyperbolic and true: the Hollers did have a

6

large banner on their property in 2007 advertising it for sale, and the reference to its size is hyperbole.

We disagree with the district court, however, that Commissioner Stenglein's second statement was also hyperbolic and true. The district court observed that the phrase "all of a sudden" was hyperbolic, and that the Hollers "were involved in conversations with the County until July 2009 related to the sale of the property," during which they "vacillated between refusing to sell and considering selling." But as stated in our earlier opinion, in addressing whether Commissioner Stenglein's statements were true, or substantially true, we must consider those statements in context, not in isolation. *See Hunter*, 545 N.W.2d at 708. The record shows that the Hollers took their property off the market in mid-2007, almost a year prior to May 2008, when the county first notified them that it was interested in acquiring their property. As our analysis in the prior appeal points out, the statement that the Hollers took their property off the market "all of a sudden," when the county wished to purchase it, is not even arguably true. The district court's reliance on contacts with the Hollers in 2009 to support that statement is unavailing because the record shows that county representatives initiated those conversations well after the Hollers had repeatedly stated that they were not interested in selling. Therefore, the record as presented does not reflect sufficient ambiguity to sustain summary judgment. Viewed in the context of the record before us, a jury could conclude that Commissioner Stenglein's second statement is neither substantially true nor a reasonable interpretation of the facts.

*Commissioner Opat's statements*

The following statements are attributed to Commissioner Opat:

> [Statement 1:] [W]ith the Holler rental property posted for sale in 2007, the County purchased the other sites necessary for an ideal, state-of-the-art library to be built on the parkway. Only after those purchases did the Hollers actively oppose the sale of their rental property and commercial building.
>
> . . . .
>
> [Statement 2:] Pursuant to that property's availability, the County purchased the four nearby properties and met several times with the Hollers, attempting to purchase their rental property. Our staff reported to us that they would only sell for $1 million or more, then insisted that the property was no longer for sale.
>
> . . . .
>
> [Statement 3:] But we will not agree to build in a subpar location due to a single property owner—not after successfully acquiring four nearby parcels, and especially not after the remaining property was once listed for sale.
>
> . . . .
>
> [Statement 4:] We will not pay $1 million for the rental property that's needed. We will wait and hope that its owners, who once had the property for sale, will accept fair-market value and allow the community to move forward on this important project. Despite their manipulation of this process, the Hollers are longtime residents in our community and I hope they will one day be partners with us on building a new library.

With respect to Commissioner Opat's first statement, the district court stated that "[t]he comment that the Hollers only actively opposed . . . selling the Property after the County purchased the nearby parcels is a reasonable interpretation of an ambiguous situation." The district court also concluded that Commissioner Opat's first statement is

a reasonable interpretation of an ambiguous situation because "[t]he County engaged in negotiations with the Hollers from July of 2008 to July of 2009, at which point the Hollers finally communicated that they were not interested in selling."

At this summary-judgment stage, we must view the record most favorably to the nonmoving party, the Hollers. *Rochester City Lines*, 868 N.W.2d at 661. As to Commissioner Opat's first statement, the record shows that the Hollers' listing of the property for sale expired in mid-2007 and the for-sale signs were removed by August 2007. The county did not initiate efforts to purchase any of the neighboring property until May 2008 and no actual purchase arrangement was made until December 2008. Furthermore, it appears that the Hollers informed the county in July and August 2008 that they were not interested in selling and would not allow an appraiser on their property. Commissioner Stenglein stated in his deposition that, when the county arranged to acquire the former Kowalski property, the Hollers had already told him that they did not want to sell. And Commissioner Opat acknowledged that he would have had information before purchasing the Kowalski site that the Hollers' property would be difficult to acquire.

Nor is Commissioner Opat's second statement a reasonable interpretation of an ambiguous situation. The record does not indicate that the county could have purchased the nearby properties "[p]ursuant to . . . availability" of the Hollers' property because county representatives knew at the time of those purchases that the Hollers' property had been taken off the market more than a year earlier and was no longer for sale. And although the Hollers had mentioned a possible sales figure of $1.2 million for the

9

property, Valerie Holler told Marcia Wilda, the Hennepin County land acquisition manager, that she believed that the market would not bear that price, and in Kevin Holler's deposition, he referred to that figure only in the context of the larger costs that they thought they faced in both relocating their business and replacing their duplex with a similar, conveniently located home.

"A statement is substantially accurate if . . . it produces the same effect on the mind of the recipient which the precise truth would have produced." *Jadwin*, 390 N.W.2d at 441 (quotation omitted). As stated in our prior opinion in this case, Commissioner Opat's first and second statements were not substantially accurate as a matter of law because a reasonable person hearing them would draw the inference that the Hollers were "holding out" for a better offer from the county, when there is competent evidence in the record showing that they were refusing to sell because they wished to continue the glass-block business at that location and possibly live there. *Holler*, 2014 WL 349738, at *4.

We agree with the district court that Commissioner Opat's third statement was partially fact and partially opinion. It was Commissioner Opat's opinion that the county would not agree to build the library in a different location, and it is true that the county had acquired other nearby parcels and that the Hollers' property was once listed for sale. But construing the record most favorably to the Hollers, it does not appear that Commissioner Opat's use of the word "manipulation" in his fourth statement was "either truthful, opinion, or a reasonable interpretation of the facts," as stated by the district court. As discussed above, the record reflects that, as soon as the Hollers learned that the

county wished to acquire their property, they told county representatives that they did not want to sell. They reiterated their opposition to selling and their intention to remain on the property to conduct Kevin Holler's business and live near Valerie Holler's workplace. They continued to resist visits from an appraiser. And their discussions with Wilda and Commissioner Opat occurred only after the Hollers were repeatedly contacted in an attempt to persuade them to sell their property, and the Hollers in turn had argued that their property was not necessary for the library project. Viewing the record in the light most favorable to the Hollers, the nonmoving party at this summary-judgment stage, whether the manipulation reference in statement four is substantially truthful is a question for the finder of fact to determine after a trial.

*County resolution*

Commissioners Stenglein and Opat introduced, and the Hennepin County board adopted, the following resolution on May 22, 2012:

> **WHEREAS,** in 2007 the County Board voted to create Capital Project 0030322, the New North Minneapolis (Webber Park) Library, which would replace the existing Webber Library with a new, green, state-of-the-art facility; and
>
> **WHEREAS,** County staff subsequently assembled portions of a site for the new Library adjacent to Victory Memorial Drive, which would optimize the beauty of the parkway and leverage the improvements made by the Victory Memorial Drive Task Force; and
>
> **WHEREAS,** the portion of the proposed library site at 1423 45th Ave N., [the Hollers' property,] was listed for sale in 2007; and

11

> **WHEREAS,** when County staff sought to negotiate a [purchase of the Holler] property, the owners stated that the property was no longer for sale and they were not interested in selling . . . .

The district court concluded that this resolution was factual and therefore not actionable. Although most of the resolution is factual, we note that in context of the entire resolution, the last statement conveys the impression that it was not until the county attempted to negotiate a purchase of the Hollers' property that the Hollers indicated that it was not for sale, that this is not a reasonable interpretation of an ambiguous situation, and that a jury could determine that in context it was false. In our opinion previously considering this case, we stated:

> when jurors would be considering whether the resolution implies a false statement, they would have in mind its context with the earlier statements made by the same two commissioners who proposed it. [On this record, t]hese statements, construed [most favorably to the Hollers as the nonmoving party], do not necessarily reflect mere "supportable interpretations" of the truth.

*Holler*, 2014 WL 349738, at *5 (quoting *Hunter*, 545 N.W.2d at 707). We conclude that the district court erred in granting summary judgment because a genuine issue of material fact exists on the falsity of this part of the resolution. With respect to this question of falsity, our prior opinion states: "We do not say that these and the other statements are false necessarily, we say only that a jury could reasonably deem them so." *Id.*

*Defamatory statements*

The second issue is whether the statements are defamatory. A statement is defamatory if it harms a person's reputation and lowers that person in the estimation of

12

the community. *Stuempges*, 297 N.W.2d at 255. Whether a statement is capable of conveying a defamatory meaning presents a question of law, which we review de novo. *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002). Published statements fall into three categories: plainly defamatory, plainly not defamatory, and arguably defamatory or not defamatory. *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*, 85 F.3d 383, 386 (8th Cir. 1996) (citing *Church of Scientology of Minn. v. Minn. State Med. Ass'n Found.*, 264 N.W.2d 152, 155 (Minn. 1978)). Whether a statement is defamatory depends on how ordinary people would interpret its language in light of the circumstances. *Gadach v. Benton Cnty. Co–Op. Ass'n*, 236 Minn. 507, 510, 53 N.W.2d 230, 232 (1952). "If the words are capable of a defamatory meaning, it is for the jury to decide whether they were actually defamatory." *LeDoux v. Nw. Publ'g, Inc.*, 521 N.W.2d 59, 68 (Minn. App. 1994), *review denied* (Minn. Nov. 16, 1994).

We analyze the defamatory character of particular statements in the context in which they appear. *Jadwin*, 390 N.W.2d at 443. In our previous opinion reversing the district court's rule-12.02(e) dismissal, we noted that Commissioner Stenglein's and Commissioner Opat's statements might be read as intended to damage the Hollers' reputations, and the statement that they had "manipulat[ed] . . . th[e] process" could "potentially harm the Hollers' reputations or subject them to ridicule or hate or diminished community esteem." *Holler*, 2014 WL 349738, at *6. The record at this summary-judgment stage is not sufficiently different to support a changed conclusion. Rather, based on our earlier analysis, we conclude that the statements are still capable of

13

a defamatory meaning and that "[a] jury, rather than the district court, must therefore decide whether the statements were in fact defamatory." *Id.*

We reverse and remand the matter for trial.[1]

**Reversed and remanded.**

---

[1] We note that, although the issue of privilege was referenced in our earlier remand of this case, it was not addressed by the district court and is not raised in this appeal. Further, we note that, in the course of litigation, neither the parties nor the district court have raised any question of whether there is a First Amendment freedom-of-expression limitation on the court's consideration of this defamation action. Consequently, we do not address the foregoing matters.