*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0298**

Todd Johnson,
Respondent,

vs.

Britta K. Anderson,
as Personal Representative of the Estate of Donnabelle M. Johnson,
decedent,
Appellant.

**Filed August 22, 2016
Affirmed
Reyes, Judge**

Cass County District Court
File No. 11CV151744

Andrew M. Shaw, Shaw & Shaw, P.A., Deer River, Minnesota (for respondent)

Matthew J. Schaap, Robert B. Bauer, Dougherty, Molenda, Solfest, Hills & Bauer, P.A., Apple Valley, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Respondent brought a declaratory-judgment claim against appellant for a determination that an option to purchase real property described within a lease agreement between respondent and his father and step-mother was valid and enforceable. Appellant

challenges the district court's order granting partial summary judgment in respondent's favor, arguing that the option to purchase is unenforceable because the description of the real property in the agreement does not satisfy the statute of frauds, and, if it is enforceable, that the cost-of-living-adjustment provision applies to the purchase price. We affirm.

## FACTS

On November 20, 1993, LeRoy Johnson and his wife, Donnabelle Johnson, entered into an agreement to lease their resort on Woman Lake in Cass County to respondent Todd Johnson, LeRoy's[1] son. The agreement describes the real property to be leased according to the following provision:

> Government Lots Two and Three Section 24, Township 140, Range 29, Cass County Minnesota, less sold. *It is the intention of the parties to include all of the real property comprising Johnsons Evergreen Lodge.* The Lessors shall provide an accurate legal description and this lease shall be amended to reflect the same.[2]

(Emphasis added). The agreement "grant[s Todd] the irrevocable option to purchase the resort operation on the terms and conditions set forth [in] exhibit B . . . upon . . . [t]he death of both [LeRoy and Donnabelle]." In addition, the agreement contains a merger clause, which provides that the agreement and the exhibits "represent the entire

---

[1] Because all of the parties share the same last name, we will refer to them by first name in this opinion.

[2] At the time the agreement was executed, LeRoy was terminally ill with cancer. Due to the circumstances, certain details, including the complete legal description, were not included in the agreement before it was executed.

agreement between the parties" and that "[t]he terms of [the] agreement may not be modified except by a written memorandum signed by the parties."

Exhibit B to the agreement is an unexecuted contract for deed between the parties. It describes the real property to be sold the same as the agreement. Exhibit B states a purchase price of $400,000 for the real and personal resort property and sets forth a payment schedule.

Four days later, Leroy died. Shortly thereafter, Todd commenced operation of the resort and has done so continuously since then. In April 1996, Donnabelle signed and executed a document titled "Amendment to Lease." The amendment states that it is "the parties [sic] desire . . . to clarify the terms of the agreement existing between them" and that the 1993 agreement is "amended as follows: . . . [t]he legal description as set forth in the original lease is hereby deleted. In its stead is hereby inserted the following legal description, to-wit." The amendment then provides a more complete legal description of the real property. Todd did not sign this document.

On July 30, 2015, Donnabelle died. In September 2015, Todd sent a letter to appellant Britta K. Anderson, as personal representative of Donnabelle's estate, stating his intent to exercise the option to purchase the resort. After Donnabelle's estate disputed the validity and enforceability of the option to purchase, Todd brought a declaratory-judgment claim. The parties brought cross motions for summary judgment. After a hearing, the district court granted partial summary judgment in favor of Todd, concluding that the real and personal resort property is subject to an irrevocable option to purchase

3

for $400,000, the option to purchase is valid and binding on Donnabelle's estate, and Todd has met the conditions to exercise the option to purchase. This appeal follows.

## D E C I S I O N

"We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "[W]e view the evidence in the light most favorable to the nonmoving party . . . and resolve all doubts and factual inferences against the moving part[y]." *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 661 (Minn. 2015), *cert. denied*, 136 S. Ct. 849 (2016). A genuine issue of material fact exists if reasonable persons might draw different conclusions based on the evidence presented. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997).

Contract interpretation is a question of law reviewed de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). "[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). If "a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Knudsen v. Transport Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. App. 2003), *review denied* (Minn. Feb. 25, 2004).

4

**I.	The description of real property contained in the agreement and exhibit B satisfies the statute of frauds.**

Appellant argues that the option to purchase is not valid and enforceable because it does not satisfy the statute of frauds.  Specifically, appellant argues that the agreement and exhibit B do not contain a valid legal description of the real property, and the amendment, which does contain a more complete legal description of the real property, does not modify the agreement or exhibit B.  We disagree.

As an initial matter, the parties do not argue that the agreement or exhibit B are ambiguous.  We agree, and therefore apply the plain and ordinary meaning of the terms of the agreement and exhibit B.  *See id.* ("Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning.").

An agreement or contract for a lease lasting longer than one year or for the sale of land is subject to the statute of frauds.  Minn. Stat. § 513.05 (2014).  Section 513.05 provides that such a contract "shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made."  To satisfy the statute of frauds, "a written contract for the conveyance of land . . . need only provide that degree of certainty which is reasonably necessary to identify . . . the land to be conveyed."  *Doyle v. Wohlrabe*, 243 Minn. 107, 110, 66 N.W.2d 757, 761 (1954).  The statute of frauds is not to be applied "in a rigid manner whereby it becomes a technical shield behind which nonperformance may be justified when the description contained in the executed memorandum, by itself or as amplified by other instruments or papers with which the

5

memorandum is expressly or impliedly connected, provides an adequate guide to locate and identify the property in the light of the surrounding circumstances." *Id.* at 111, 66 N.W.2d at 761 (emphasis omitted).

We conclude that the description of the real property contained in the agreement and exhibit B satisfies the statute of frauds. The agreement and exhibit B both state that "[i]t is the intention of the parties to include all of the real property comprising Johnson's Evergreen Lodge." This description of the real property "provides an adequate guide to locate and identify the property in the light of the surrounding circumstances." *See id.* (emphasis omitted). Further, we note that both parties to the agreement were familiar with the resort and the real property that comprised it. Therefore, they would have understood what was meant by this description of the real property and would have only needed to provide the complete legal description at a later date consistent with this understanding.

By its explicit and clear terms, the agreement and exhibit B allow the real property description to be amended with a subsequent legal description, further satisfying the statute of frauds. The agreement and exhibit B both direct LeRoy and Donnabelle to "provide an accurate legal description" at a later date and state that, once provided, the documents "shall be amended to reflect the" description. The amendment executed by Donnabelle simply provides a more complete legal description of the real property comprising Johnson's Evergreen Lodge. Therefore, the agreement and exhibit B were amended with this description of the property when Donnabelle executed the amendment.

Appellant argues that the amendment did not modify the agreement or exhibit B because (1) the amendment was never signed or accepted by Todd; (2) the agreement contains a merger clause; and (3) exhibit B was not referenced in the amendment. We are not persuaded.

As an initial matter, we note that the party who does not sign, approve, or execute an agreement is typically the party who invokes the statute of frauds or a merger clause as a defense. *See, e.g., Olson v. Ronhovde*, 446 N.W.2d 690, 692 (Minn. App. 1989) ("The statute [of frauds] properly applies to shield a party from liability by voiding a contract in a situation where a party did not sign the agreement raises the statute as a defense."). Here, despite Donnabelle signing both documents, Donnabelle's estate is challenging the agreement and amendment. In short, it is unclear whether Donnabelle's estate may even raise the statute of frauds.

In addition, Todd was not required to execute or accept the amendment. The agreement and exhibit B only direct LeRoy and Donnabelle to provide an "accurate legal description." They do not require Todd to accept the legal description once provided. Moreover, the merger clause contained in the agreement does not render the amendment ineffective. As stated earlier, the parties were in agreement as to what property the option to purchase referred to when they executed the agreement. The amendment only supplemented the existing terms of the agreement pursuant to the express language in the agreement; it did not add any additional terms. Finally, because the agreement grants Todd an option to purchase "on the terms and conditions set forth [in] exhibit B," the

7

reference in the amendment to "original lease" refers to both the agreement and exhibit B.

**II.     The cost-of-living adjustment provision does not apply to the purchase price.**

Appellant next argues that, even if the agreement is valid and enforceable, exhibit B requires a cost-of-living adjustment to the $400,000 purchase price. We disagree. We conclude that the cost-of-living increase only applies to the regular payments to be made to LeRoy and Donnabelle by Todd.

Exhibit B states a purchase price of $400,000 and provides that "[t]he parties acknowledge that the . . . purchase price is less than the actual market value of the property being sold and purchased" and that "[t]o the extent that the true value exceeds the purchase price the parties agree that said difference represents a gift from [LeRoy] to his son, [Todd]." The parties agreed that the purchase price would be set at $400,000 and less than actual market value.

Exhibit B further explains how the purchase price is to be paid:

> A payment equal to the sum of $6000.00 if the same were paid on January 1, 1994 shall be due on June 15th in the year this contract is signed and an equal payment on the 15th of July, August, September, October, and November of said year. The exact *payment [is] to be adjusted for inflation annuall*y in order to maintain a level standard of income to [LeRoy and Donnabelle] based on 1994 dollars.

(Emphasis added). By its clear language, the annual inflation adjustment is only to be applied to the regular payments and not the total purchase price. The clear intent of the annual inflation adjustment is to provide a continued income stream to LeRoy and Donnabelle until their death, which it is undisputed they received from Todd.

8

**III.    There are no genuine issues of material fact as to the price and property terms.**

Finally, appellant argues that "the dispute that existed at [Donnabelle's] death regarding the 1) price and 2) property terms present[ed] an additional question of fact." We disagree. Although the record indicates that the parties disputed the price and the property terms, the dispute centers around the interpretation of an unambiguous contract, which is a question of law. *See Caldas*, 820 N.W.2d at 832. Therefore, these are not genuine issues of material fact.

In sum, the district court properly granted partial summary judgment in favor of Todd.

**Affirmed.**