McKeig, Justice.
*445 Appellant City of Rochester ("the City") owns a fleet of buses, which have been operated by appellant First Transit, Inc. ("First Transit") since 2012. Until 2012, however, these buses were operated by respondent Rochester City Lines Company ("RCL"). After the contract was awarded to First Transit, RCL challenged the City's competitive bidding process, which we addressed in Rochester City Lines, Co. v. City of Rochester (RCL I ), 868 N.W.2d 655 (Minn. 2015), cert. denied , --- U.S. ----, 136 S.Ct. 849, 193 L.Ed.2d 720 (2016). RCL has now also challenged the City's 2016 competitive-bidding process, which, like the 2012 process, resulted in the bus-operation contract being awarded to First Transit.
The City's appointed moderator, appellant Justin Templin ("the Moderator"), rejected RCL's pre-bid protest. The court of appeals, however, held that the City's Request for Proposals ("RFP") appeared impermissibly biased against RCL, because five of the eight members of the 2016 proposal evaluation committee had served on the 2012 proposal evaluation committee, and RCL had previously accused the 2012 proposal evaluation committee of bias. Rochester City Lines Co. v. City of Rochester , 897 N.W.2d 792, 799-800 (Minn.App. 2017) (hereinafter " Rochester City Lines "). The court of appeals therefore declared the 2016 competitive-bidding process, and the resulting contract awarded to First Transit, invalid. Id. at 801. We reverse.
FACTS
A. The 2012 RFP[1]
In 2011, the Federal Transit Administration, which provided and continues to provide grant funding for the City's bus-operation contract, directed the City to award bus-operation contracts via a competitive-bidding process. The City issued an RFP in December 2011 stating that it would use a "best value" bidding process. RCL filed a pre-bid protest of the 2012 RFP with the Rochester City Attorney. RCL also commenced a lawsuit in Olmsted County District Court on February 15, 2012, in an effort to obtain a temporary injunction against the City. Both RCL's pre-bid protest and injunction request were denied, and on April 2, 2012, the City awarded the four-year bus-operation contract to First Transit.
Three days after First Transit was selected, RCL filed a post-bid protest, which was also denied. RCL then amended its district court complaint to include various new defendants and claims, and sought a declaratory judgment that the bidding process was unlawful. The district court granted summary judgment in favor of the City and First Transit, and the court of appeals affirmed. We granted review as to RCL's bid-protest claims, and reversed the court of appeals, on the grounds that "two procedural irregularities raise[d] the specter of pervasive bias against RCL" in the 2012 RFP evaluation process: (1) whether First Transit gained an unfair advantage *446 when the 2012 RFP evaluation committee considered the answers of two of RCL's managers, who First Transit had listed as its prospective management personnel, in scoring both RCL and First Transit's interviews; and (2) whether RCL was unfairly disadvantaged when two city employees withdrew, without notice and on advice from the Rochester City Attorney, from serving as references for RCL. RCL I , 868 N.W.2d at 664-65. We thus remanded the 2012 RFP litigation for further proceedings. Id. at 665.
On remand, the district court found that there was no evidence that RCL had been unfairly disadvantaged, or that First Transit had gained an unfair advantage by having two of RCL's managers' answers included in First Transit's score. The district court also found that RCL's proposal was scored higher than it deserved, despite the withdrawal of its two references. The district court further found that there was no collusion between First Transit and the City, or any misconduct in the 2012 RFP process. RCL's appeal of that decision is currently pending before the court of appeals. Rochester City Lines Co. v. City of Rochester, et al. , No. A17-1944 (Minn. App. filed Dec. 6, 2017).
B. The 2016 RFP
While the 2012 RFP litigation was being considered on remand, the City issued a new RFP for a bus-operation contract from January 1, 2017 to December 31, 2021 ("the 2016 RFP"). In response to the issues that we identified in RCL I , the City hired the Moderator as outside counsel to facilitate the process, including all bid-protest procedures. The City also prohibited individuals from appearing at interviews for more than one proposal unless they were a current employee of the bidder or had a written agreement to accept employment with the bidder pending the contract award, and noted that each interview would be scored separately. And at a July 6, 2016 pre-bid informational presentation, the Moderator also informed prospective bidders, including RCL, that members of the 2016 RFP evaluation committee could not serve as references. The Moderator further explained that, while the evaluation committee had not been finalized, it would include four of the City's employees-the director of public works, the transit and parking manager, the transit and parking assistant, and the transit planner. All four of these employees served on the 2012 RFP evaluation committee. On August 18, 2016, the Moderator announced that the City's finance director and three outside observers would be the other four members of the 2016 RFP evaluation committee. One of the three outside observers also had served on the 2012 RFP evaluation committee.
Four days later, RCL submitted a pre-bid protest, alleging: (1) unfair deprivation of references and ability to compete; (2) unfair diminution of reference weight; (3) unfair competition regarding First Transit; (4) unfair composition of the evaluation committee; (5) unfair pre-submission protest procedure; (6) unfair reliance on revoked guidance; and (7) unfair opportunities for certain businesses. Among its requests for relief, RCL requested that the 2016 RFP evaluation committee be re-formed to exclude anyone who had served on the 2012 RFP evaluation committee, because the members who had been on the 2012 RFP evaluation committee were allegedly biased against RCL.
The Moderator denied RCL's request for relief. Among his findings, the Moderator noted that RCL I did not find any bias on the part of any individual involved in the 2012 RFP, and also highlighted that the issues raised by RCL I regarding the evaluation committee's interview process *447 and references were specifically addressed by the 2016 RFP. The Moderator therefore concluded that no remedial action was required regarding the composition of the 2016 RFP evaluation committee.
RCL sought certiorari review. In the opening brief to the court of appeals, RCL reasserted the arguments from its pre-bid protest. In the reply brief, however, RCL reframed its argument, asserting that, "at the very least, the 2016 contract award suffers from an objectively reasonable perception of bias."
The court of appeals acknowledged that RCL had not presented any evidence that any of the 2016 RFP evaluation committee members were actually biased against RCL. Rochester City Lines , 897 N.W.2d at 796-97. However, the court of appeals interpreted RCL's pre-bid protest to include an appearance of bias claim, and held that the Moderator erred by failing to consider that claim in his response. Id. at 799-800. The court of appeals therefore reversed the Moderator's decision and invalidated both the City's 2016 RFP process and First Transit's contract from 2017 to 2022. Id. at 801. We granted petitions for further review from the City, the Moderator, and First Transit.
ANALYSIS
We review the Moderator's resolution of RCL's bid protest "under a limited and nonintrusive standard" because it is a quasi-judicial decision. Sawh v. City of Lino Lakes , 823 N.W.2d 627, 635 (Minn. 2012) (internal quotation marks omitted). We cannot substitute our own findings of fact, and we do not review conflicting evidence de novo . Id.
I.
In RCL I , RCL claimed that the terms of the 2012 RFP were excessive and unreasonable. 868 N.W.2d at 661-62. We held that RCL had forfeited this claim "by failing to raise it in accordance with the pre-bid protest procedures outlined in the RFP." Id. at 662. Specifically, we deemed the argument forfeited because "[n]owhere in the documents submitted to the City prior to the bidding did RCL object to any of the contractor qualifications as unreasonable or excessive." Id. Similarly, the City argues in this case that RCL's pre-bid protest did not raise an appearance-of-bias argument, and that RCL therefore forfeited this claim. We agree.
The 2016 RFP permitted written pre-bid protests "regarding any aspect of the RFP document, attached materials[,] and City selection criteria and procedures," provided that such protests were "specific and cite[d] the particular conduct, action[,] or non-action that is the subject of the [p]rotest." In its pre-bid protest, RCL framed its claim of bias as a complaint about "the unfair composition of the evaluation committee." Specifically, RCL complained that "at least some of the members of the [c]ommittee are biased and their bases for evaluation of proposers are pre-determined." RCL also asserted that "[t]hese individuals cannot serve as members of the [c]ommittee without violating their duty to be fair and impartial during the evaluation of proposals and without tainting the entire evaluation and contract award process." RCL further protested that the five members who had served on the 2012 evaluation committee "cannot now participate in a process that requires fairness and impartiality. To allow otherwise would be inherently unfair and would deprive RCL of its due process right to have its proposal evaluated fairly and impartially."
We have recognized that the appearance of bias and actual bias are separate legal concepts. See *448 State v. Am. Fundamentalist Church (In re Collection of Delinquent Real Prop. Taxes ), 530 N.W.2d 200, 206 (Minn. 1995) (acknowledging possibility that decision-maker could appear biased without actually being biased); State v. Moss , 269 N.W.2d 732, 734-35 (Minn. 1978) (limiting a defendant who untimely raised allegations that a district court judge was biased to presenting evidence of actual bias, rather than just appearance of bias); Wiedemann v. Wiedemann , 228 Minn. 174, 36 N.W.2d 810, 812 (1949) (noting that a judge could be disqualified for appearance of bias even where no bias-in-fact existed). While we do not require participants in a quasi-judicial proceeding to frame the issue in precise legal terms, we do require "sufficient specificity to provide fair notice of the nature of the challenge." Big Lake Ass'n v. Saint Louis Cty. Planning Comm'n , 761 N.W.2d 487, 491 (Minn. 2009). Put another way, the quasi-judicial decision-maker must be given "an opportunity to consider and address the issue," or it will be forfeited. Id.
RCL's allegations did not specifically articulate an appearance-of-bias claim. Instead, RCL asserted that the members of the committee were biased, that their bases for evaluation were pre-determined, that they were incapable of being fair and impartial, that they would violate their duty to be fair and impartial, and that allowing them to serve on the committee would be inherently unfair and would violate due process. The plain language RCL used did not complain of an appearance of bias with sufficient specificity to provide the Moderator with fair notice that he needed to consider whether the process appeared to be biased.
Moreover, RCL failed to properly raise an appearance-of-bias argument before the court of appeals. In its initial brief, RCL complained again that the five overlapping members between the 2012 and 2016 RFP evaluation committees were biased, and would be unable to be fair and impartial. Additionally, RCL's initial brief before the court of appeals referenced the "admitted bias ... of the evaluation committee members," and noted that the Moderator did not deny that those committee members were biased. These arguments also assert only actual bias. RCL did raise the appearance of bias in its reply brief, but litigants cannot raise new arguments in reply briefs. See Minn. R. App. P. 128.02, subd. 4 (limiting reply brief to new matter raised in respondent's brief); see also State v. Ali , 895 N.W.2d 237, 247 n.9 (Minn. 2017) (holding that, where the State did not raise argument in its response brief, defendant could not raise it for the first time in his reply brief). Thus, RCL also failed to properly raise this argument before the court of appeals. RCL therefore forfeited any appearance-of-bias argument.
II.
RCL raised four additional arguments before the court of appeals: (1) that the City unfairly deprived RCL of references and the ability to effectively compete; (2) that the City unfairly deprived RCL of the full benefit of its prior performance; (3) that the City acted unfairly as to the competition regarding First Transit; and (4) that the City unfairly denied opportunities for small business. The court of appeals did not address these arguments. See Rochester City Lines , 897 N.W.2d at 800. When arguments for reversal on appeal are raised before the court of appeals, but not addressed because that court reverses on another ground, and those arguments are not subsequently raised before us, an appropriate disposition upon reversal by this court is to remand the case to the court of appeals to consider the alternative arguments. Baker v. Baker , 753 N.W.2d 644, 653 (Minn. 2008). We therefore remand this case to the court of appeals for consideration of RCL's four alternative arguments.
*449 CONCLUSION
For the foregoing reasons, we reverse the court of appeals' decision and remand to the court of appeals for further consideration of RCL's four alternative arguments.
Reversed and remanded.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

The underlying facts of the 2012 RFP litigation are fully laid out in our opinion in RCL I , 897 N.W.2d 792.